**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| **LAW HEATING AND COOLING LLC** | : | Case No. 2:23-cv-981 |
| 2014 Washington Boulevard | : | |
| Belpre, Ohio 45714 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| **INTERNATIONAL ASSOCIATION** | : | |
| **OF SHEET METAL, AIR, RAIL AND** | : | |
| **TRANSPORTATION WORKERS** | : | |
| **LOCAL UNION NO. 33** | : | |
| 12515 Corporate Drive | : | |
| Parma, Ohio 44130 | : | |
| | : | |
| Defendant. | : | |

Plaintiff Law Heating and Cooling LLC ("Law"), by and through counsel, and for its Complaint against Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers Local Union No. 33 (the "Union") states as follows:

1. This is an action brought under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §185, to vacate an arbitration award issued in favor of Defendant Union by the Local Joint Adjustment Board ("LJAB") and for declaratory judgment pursuant to 28 U.S.C. §2201 and the LMRA.

2. Law is an Ohio limited liability company and an employer in an industry affecting commerce within the meaning of the LMRA.

3. Law maintains its headquarters and does business at 2014 Washington Boulevard, Belpre, Ohio 45714.

4. The Union is a labor organization representing employees in an industry affecting commerce as defined in the LMRA.

5. The Union maintains its headquarters at 12515 Corporate Drive, Parma, Ohio 44130 and its duly authorized officers and/or agents are engaged in representing or acting for members in Belpre, Ohio.

6. This Court has subject matter jurisdiction pursuant to 29 U.S.C. §185(c), 28 U.S.C. §1331 and 28 U.S.C. §2201.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 and 29 U.S.C. §185(a).

8. Law and the Union were parties to a Modified Standard Form of Union Agreement for Local Union No. 33 Parkersburg District Between Sheet Metal Contractors Association of West Virginia and International Association of Sheet Metal, Air, Rail and Transportation Workers Local Union No. 33 Parkersburg District, effective June 1, 2019 through May 31, 2022 ("CBA"), and an Agreement for Service Technicians and Residential Applications of the Parkersburg District Local Union No. 33, which also expired on May 31, 2022 ("Residential CBA") (collectively "CBAs").  (Copies of the CBAs are attached hereto as Exhibit 1 and 2).

9. Law terminated both CBAs with the Union effective June 1, 2022 and is therefore not subject to either of the CBAs.

10. Prior to Law's termination, Law also gave notice to the Sheet Metal and Roofing Contractors Association of West Virginia and the International Association of Sheet Metal, Air, Rail and Transportation Workers Local #33 Parkersburg District that it was

terminating its relationship by letter dated December 20, 2021 with respect to the CBAs expiring on May 31, 2022 and any and all other agreements between the Association and the Union.

11. On January 31, 2022, the Union provided Law with written notice of reopening the terms of the CBAs expiring May 31, 2022.

12. Law notified the Union of the termination of the CBAs by letter dated June 1, 2022.

13. On or about June 21, 2022, Randy Gombos, Business Representative of the Union, was observed watching Law's employees (former members of the Union) enter and leave Law.

14. The Union did not discuss this matter with Law or contact Law to raise any issues or grievances at that time.

15. Instead, the Union waited until July 28, 2022, 57 days after it was notified of the termination of the CBA, to execute a grievance alleging violation of the CBA for employing employees that are not members of the Union and not paying benefits. ("Grievance") (Exhibit 3).

16. The Union then waited another 8 days after the filing of the Grievance, until August 5, 2022, to mail a copy of the Grievance to Law.

17. In the August 5, 2022 letter, the Union President informed Law that a Local Joint Adjustment Board hearing would be held.

18. Section 1 of the CBA grievance procedures require: "Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice."

19. The Union did not contact Law to hold a conference or to discuss and attempt to settle the Grievance at any time prior to or after filing the Grievance.

20. The grievance and arbitration procedure of the CBA, Section 1 requires that, "**[t]o be valid,** grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance." (Emphasis added).

21. Pursuant to Article X, Section 2 of the CBA, grievances not settled as provided in Section 1 by informal conferences "may be appealed" to the LJAB and such Board shall meet promptly "but in no case more than fourteen (14) calendar days following the request for its services unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board."

22. The initial hearing on the Grievance was set for September 7, 2022, more than 14 days after the Grievance was submitted to the LJAB. The hearing was then rescheduled without consulting with Law for September 28, 2022.

23. Law was not contacted regarding the hearing date, a date which was chosen in the middle of a national trade convention attended by Law, and Law did not agree to extend the 14-day period of time required in the CBA.

24. Minutes prior to the scheduled hearing, the LJAB signed off on procedures which excluded counsel from the proceedings. These procedures were not provided to Law prior to its counsel traveling to and attending the hearing on its behalf.

25. Prior to the hearing on September 28, 2022, the LJAB excluded the court reporter brought to the hearing to create a record for Law, and excluded Law's counsel from attending the hearing on its behalf.

4

26. The LJAB subsequently notified Law on October 13, 2022 that it rescheduled the hearing for November 15, 2022.

27. The LJAB hearing was thereafter rescheduled for December 15, 2022. Law again objected to the hearing proceeding, the Grievance and the jurisdiction of the LJAB.

28. Law requested to have counsel attend the hearing as a representative, even if participation was not permitted, just as the Union would have representatives present at the hearing and sitting as members of the LJAB.

29. Law was informed that its attorney was not permitted to attend.

30. Law was forced to do its best to represent its own interest while the Union had its representatives present. In fact, the Union President and Business Manager, Tim Miller, and its Financial Secretary/Treasurer/Vice President, David Larson, sat on the LJAB to decide the Grievance.

31. Law continued to object at the hearing to it proceeding on the Grievance based on, among other things, the termination of the CBA, the timeliness of the Grievance, the procedural defects in the grievance process and hearing, and the jurisdiction of the LJAB.

32. Law received the Decision of the LJAB on January 9, 2023. (Exhibit 4).

33. The LJAB Decision denied Law's request to file post-hearing briefs, and overruled Law's objections (1) to the proceeding, (2) to the jurisdiction of the LJAB, (3) to the Grievance as Step 1 of the process was not followed and (4) to timeliness of the Grievance as it relates to Law's obligation to remit benefits on hours worked. However, the LJAB Decision granted Law's timeliness objection as it relates to Law's assigning bargaining unit work to non-bargaining unit members.

34. Although no evidence or arguments regarding benefits or damages were presented at the hearing by the Union and Law was not given the opportunity to respond to any evidence or argument regarding benefits or damages, the LJAB sustained the Grievance and granted a motion made "by a member of the Board" that Law be ordered to pay damages "in the amount of $95,347.20 plus a penalty to deter future violations in the amount of 20% which equals $19,069.44 for a total of $114,416.64."

35. The entire damage award was ordered to be distributed to the National Pension Fund as an uncredited contribution to improve funding and to the JATF, the Joint Apprenticeship and Training Committee, with the penalty going solely to the JATF.

## COUNT I

36. Law incorporates by reference the prior allegations contained within this Complaint as if fully restated herein.

37. All evidence before the LJAB conclusively established that Law terminated and was no longer a party to the CBA, and that the alleged violation of the CBA by Law had occurred since at least June 1, 2022 and that the Union became aware on June 1, 2022 and no later than June 21, 2022.

38. The Decision of the LJAB is contrary to and ignores the terms of the CBA because it failed to address and apply specific language in the CBA, including but not limited to Article X, Sections 1 and 2.

39. The LJAB lacked jurisdiction over Law and acted outside its legal and express contractual authority by considering the Grievance and issuing a Decision against Law.

40. The LJAB acted outside its authority by resolving a dispute not properly committed to arbitration pursuant to the express terms of the CBA.

41. The LJAB was not even arguably construing or applying the CBA in issuing its Decision and awarding the damages as set forth in the Decision.

42. The Decision and award of damages is not supported by the evidence at the hearing and imposes damages not provided for in the CBA.

43. The LJAB had a conflict of interest in issuing the Decision and award of damages.

44. The Decision violated public policy and the body of federal law developed under 29 U.S.C. §185.

45. The Decision does not draw its essence from the CBA and instead the LJAB imposed its own brand of industrial justice.

46. The Decision and award should be vacated.

## COUNT II

47. Law incorporates by reference the prior allegations contained within this Complaint as if fully restated herein.

48. The CBA was properly terminated by Law at its expiration.

49. Law objected to the LJAB hearing proceeding based on its termination of the CBA as well as the terms of the CBA.

50. The LJAB was comprised of equal members of the Union and representatives of the Sheet Metal and Roofing Contractors Association of West Virginia, to which Law withdrew from in December, 2021.

51. Law was denied any representation at the hearing.

52. The LJAB was not impartial and there was evidence of partiality in the arbitrators.

53. The LJAB refused to hear and/or accept evidence pertinent and material to the matter.

54. Notwithstanding the objections by Law, the LJAB issued the Decision.

55. The LJAB Decision was procured by corruption, fraud or undue means.

56. The LJAB exceeded its authority in issuing the Decision, and so imperfectly exceeded its powers that a mutual, final and definite award was not made.

57. The LJAB acted outside of its authority by resolving a dispute not subject to arbitration due to the termination of the CBA.

58. The LJAB acted arbitrarily and in violation of established law.

59. The LJAB acted in an arbitrary and capricious manner in its procedural and substantive decisions, including but not limited to the issuance of its Decision including damages.

60. The Union and the LJAB abused the CBA procedures and the LJAB procedures and denied Law due process during the LJAB hearing.

61. Pursuant to Section 10 of the Federal Arbitration Act, good cause exists for this Court to vacate the Award.

62. The LJAB decision must be vacated pursuant to 9 U.S.C. §10 of the Federal Arbitration Act.

63. Based on the actions of the LJAB, this matter should not be directed back to the LJAB for rehearing after vacating the Award, and this Court should decide the issues that were originally before the LJAB in favor of Law.

## COUNT III

64. Law incorporates by reference the prior allegations contained within this Complaint as if fully restated herein.

65. Law properly terminated the CBAs and is not subject to a collective bargaining agreement with the Union.

66. The LJAB issued a Decision and award in favor of Defendant based on the terminated CBA alleging a violation of the CBA by Law.

67. The Decision and Award requires Law to pay $114,416.64.

68. The Union notified Law that it would begin collection actions if it did not pay the damages award.

69. An actual, present and justiciable controversy exists between the Union and Law as to whether Law is a party to the CBA, whether Law is required to abide by the terms of the CBA, whether Law violated the terms of the CBA and whether Law is required to pay the damages award in the Decision.

70. Upon consideration of the dispute, the Court should enter a declaratory judgment that Law is not a party to the CBA and is not bound by its terms, and therefore could not have violated the terms of the CBA.

71. Upon consideration of the dispute, the Court should enter a declaratory judgment that the LJAB's Decision is vacated, void and unenforceable.

**WHEREFORE**, Law demands as follows:

    A. An Order vacating the Decision and the Award of the Local Joint Adjustment Board and declaring that both the Decision and the Award are invalid and unenforceable;

    B. An Order awarding Law its costs and reasonable attorney's fees incurred in this action;

    C. An Order declaring that Law is not a party to the CBA, did not violate the CBA and is not bound by its terms;

    D. An Order declaring the LJAB Decision is void and unenforceable; and

    E. An Order granting Law such other further relief as the Court deems just and proper.

Respectfully submitted,

*s/Amy C. Mitchell*
Amy C. Mitchell (0069548)
AUMAN, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402
Ph: (937) 223-6003/Fax: (937) 223-8550
Email: acm@amfdayton.com
*Attorney for Plaintiff*